IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DYRON D. HAMMARY,               )
                                )
                Plaintiff,       )
                                )
        v.                       )              1:09-CV-781
                                )
JERRY WAYNE SOLES, JR., ET AL., )
                                )
                Defendants.      )

### MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Dyron Hammary has sued several law enforcement officers and a dog for civil rights violations arising out of a traffic stop and his subsequent arrest and imprisonment on later-dismissed cocaine charges. The complaint adequately alleges that the officer who stopped Mr. Hammary, searched his car, and arrested him discriminated against Mr. Hammary based on his race in violation of 42 U.S.C. § 1981 and committed Fourth Amendment violations actionable under 42 U.S.C. § 1983. The complaint also adequately alleges that another officer who interrogated Mr. Hammary after his arrest violated § 1981. As to those claims, Defendants' Rule 12(b)(6) motion to dismiss, (Doc. 16), should be denied; otherwise, the complaint fails to state a claim on which relief may be granted and the motion should be allowed. Defendants' motion for Rule 11 sanctions, (Doc. 22), should be granted to the extent it concerns Mr. Hammary's filing of claims against a police dog, but otherwise is taken under advisement pending a hearing.

As is appropriate in connection with a motion to dismiss for failure to state a claim, the Court will accept the factual matter pleaded in the complaint as true and view it in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The factual recitation here is taken from Mr. Hammary's complaint.[1]

On September 10, 2008, Mr. Hammary, who is African-American, was driving along the interstate in a truck legally rented by his fiancée. (Doc. 2 at ¶¶ 12-13.) He was accompanied by a passenger, Kenneth Boothe. (*Id.* at ¶ 13.) Even though Mr. Hammary was obeying the speed limit and other traffic rules, defendant Detective Jerry Wayne Soles, Jr., of the Davidson County Sheriff's Office stopped Mr. Hammary. (*Id.* at ¶ 12.) After looking at Mr. Hammary's driver's license, Detective Soles asked, "Where are you colored boys coming from?" (*Id.*) Upon seeing that Mr. Hammary's name was not on the rental agreement, Detective Soles put Mr. Hammary in the back of his police vehicle. (*Id.* at ¶ 13.) Detective Soles then started asking questions about luggage he observed in the back of the truck, stating, "I know you Niggers' [sic] got fucken [sic] drugs in that car." (*Id.*)

Detective Soles asked for Mr. Hammary's consent to search the truck. (*Id.*) It is unclear whether Mr. Hammary gave such consent, though he did protest that there was nothing illegal in

---

[1] Defendants have submitted a video of the stop in connection with their motion for sanctions, but have not asked the Court to consider this video and audio evidence in resolving the motion to dismiss; it would be plainly inappropriate to do so. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Therefore, the Court has not considered that video in connection with the motion to dismiss. However, the video and audio recordings of the stop could prove dispositive at the summary judgment stage. *See Scott v. Harris*, 550 U.S. 372, 380-381 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

the truck. (*Id.*) Detective Soles ordered Mr. Boothe to exit the truck and sit on the pavement, then approached the truck with defendant "Xena," a drug-sniffing dog. (*Id.* at ¶ 14.) In an allegation that is not completely clear, Mr. Hammary alleges that Detective Soles contends that he gave Xena a command to "find the dope," after which the dog alerted at the passenger side door. (*Id.* at ¶ 19.) One would infer from this that Mr. Hammary contends the dog did not in fact alert. Detective Soles removed luggage from the truck while stating, "I knew you Niggers' [sic] had drugs in that car." (*Id.* at ¶ 15.) Detective Soles opened the luggage and found milk formula for Mr. Hammary's fiancée's baby. (*Id.* at ¶ 15.) Without conducting a field test, Detective Soles assumed the substance was cocaine. (*Id.* at ¶¶ 15, 18.) He arrested both men and charged Mr. Hammary with possession of drug paraphernalia, maintaining a vehicle for a controlled substance, and two counts of trafficking in cocaine. (*Id.* at ¶ 16.)

After his arrest, Mr. Hammary was taken to a sheriff's office, where defendant Lieutenant M. Potter questioned him. (*Id.* at ¶ 26.) When Mr. Hammary complained about the conduct of Detective Soles, Lieutenant Potter responded, "Shut your black lying mouth," adding, "Only thing I want to hear from you is a confession, that you were bringing that cocaine to sale [sic] in my County." (*Id.*) Lieutenant Potter also made threatening physical gestures. (*Id.*) Mr. Hammary then refused to talk with Lieutenant Potter and requested a lawyer. (*Id.* at ¶ 27.)

On September 24, more than two weeks after Mr. Hammary's arrest, defendant Ricky Kilian submitted the substance seized during the traffic stop to a North Carolina State Bureau of Investigation ("SBI") lab. (*Id.* at ¶ 21.) On October 9, the lab informed Detective Soles that the seized substance was not a controlled substance. (*Id.* at ¶ 22.) A little over a month later, on November 17, Detective Soles offered testimony to a grand jury that contradicted the lab report, and the grand jury returned a two-count indictment against Mr. Hammary for trafficking cocaine.

(*Id.* at ¶ 23.) Defendant Kevin Wallace also gave unspecified false information to the grand jury. (*Id.* at ¶ 25.)

While not alleged directly, it appears from the complaint that Mr. Hammary was unable to make bond. A month after he was indicted, and about three months after his traffic stop and arrest, the charges were apparently dismissed and Mr. Hammary was released. (*Id.* at ¶ 30.)

## PROCEDURAL BACKGROUND

Mr. Hammary, acting pro se, filed a verified complaint against the following defendants in their individual and official capacities: (1) Detective Soles; (2) Lieutenant Potter; (3) Kevin Wallace of the Guilford County Sheriff's Office; (4) the police dog Xena; (5) Mr. Kilian; and (6) Davidson County Sheriff David Grice.[2] The complaint alleges that Defendants deprived Mr. Hammary of his civil rights in violation of 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986. Defendants filed a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted, (Doc. 16), and a motion for Rule 11 sanctions, (Doc. 22).[3]

## ANALYSIS

**Rule 12(b)(6) Motion to Dismiss**

In deciding a motion to dismiss under Rule 12(b)(6), courts apply the well-known standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*,

---

[2] The complaint describes Mr. Grice's title as "Chief of Sheriffs." Defendants describe Mr. Grice's title as simply "Sheriff."

[3] Defendants also advance a procedural basis for dismissal. They contend that they were served with Mr. Hammary's complaint nearly two months after an order by the Magistrate Judge instructing Mr. Hammary to serve them within 15 days. But Defendants fail to explain how any prejudice resulted to them from this delay, and they still received the complaint well within the 120-day timeframe typically prescribed by Federal Rule of Civil Procedure 4(m). The Court, in its discretion, finds that service was adequate here and that the issue raised by Defendants does not merit dismissal of Mr. Hammary's suit.

4

550 U.S. 544 (2007).  A plaintiff must articulate facts that, when accepted as true, establish "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "The plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Francis*, 588 F.3d at 193 (quoting *Iqbal*, 556 U.S. at 679).

## I.      Section 1981

Mr. Hammary alleges that each of the defendants violated 42 U.S.C. § 1981, which states in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  A plaintiff asserting a § 1981 claim must demonstrate "(1) that he is a member of a racial minority, (2) that defendants had the intent to discriminate against him on the basis of his race, and (3) that defendants' discrimination concerned one of the statute's enumerated activities."  *Pena v. Porter*, 316 F. App'x 303, 316 (4th Cir. 2009) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)); *see generally Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (concluding that § 1981 "can be violated only by purposeful discrimination").

5

## A. Defendants Soles and Potter

Mr. Hammary has sufficiently alleged facts establishing plausible claims for relief under § 1981 against Detective Soles and Lieutenant Potter in their individual capacities. Mr. Hammary is a member of a racial minority. He alleges that Detective Soles made a series of racially biased comments to him and that Lieutenant Potter made at least one similar comment. The context of those alleged comments suggests that discriminatory intent motivated Detective Soles's decisions to pull Mr. Hammary over, to conduct a search in which Detective Soles may have induced Xena to alert, to conclude that the seized substance was cocaine without conducting a field test, and to give grand jury testimony directly contradicting the SBI lab's analysis, and motivated Lieutenant Potter's threats and demand for a confession.

The Fourth Circuit "has never decided whether racially motivated searches and seizures fall within § 1981's enumerated activities and thus satisfy the third prong of a § 1981 claim." *Pena*, 316 F. App'x at 316. Other courts of appeal considering the question have held that "misuse of governmental power motivated by racial animus comes squarely within the 'equal benefit' and 'like punishment' clauses" of § 1981(a). *Alexis v. McDonald's Rests. of Mass., Inc.*, 67 F.3d 341, 348 (1st Cir. 1995) (collecting cases). Here, the complaint asserts facts that, when taken as true, support the inference that Mr. Hammary would not have been pulled over, detained, searched, arrested, indicted, imprisoned, or threatened had he not been black. This alleged conduct of Detective Soles and Lieutenant Potter potentially falls within the scope of § 1981's prohibition against discrimination. *See, e.g.*, *Mahone v. Waddle*, 564 F.2d 1018, 1027-28 (3d Cir. 1977) (interpreting § 1981's "equal benefit" and "like punishment" clauses as protecting against racially biased verbal and physical abuse, false arrest, and false testimony by police officers against black plaintiffs).

6

Police officers sued in their individual capacities have qualified immunity from personal liability for damages with respect to "official actions taken in good faith." *Hughes v. Blankship*, 672 F.2d 403, 406 (4th Cir. 1982) (citing *Pierson v. Ray*, 386 U.S. 547 (1967)); *see also Alexis*, 67 F.3d at 348 n.7 (collecting cases and explaining the availability of qualified immunity in § 1981 suits). Detective Soles and Lieutenant Potter are immune from § 1981 liability to the extent their alleged conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *cf. Brockington*, 637 F.3d at 506 (explaining, in § 1983 context, that "[o]fficials will receive immunity unless . . . (1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was 'clearly established' such that a reasonable person would have known his acts or omissions violated that right"). A reasonable law enforcement officer would have known that stopping, detaining, searching, arresting, charging, or threatening a person based on race would constitute an unlawful violation of the person's rights. Thus, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in Mr. Hammary's favor, the Court concludes that the defense of qualified immunity should be denied at this stage and that Mr. Hammary's individual-capacity § 1981 claims against Detective Soles and Lieutenant Potter survive Defendants' motion to dismiss.

Mr. Hammary has failed, though, to adequately allege official-capacity § 1981 claims against Detective Soles or Lieutenant Potter. An official-capacity suit is, in all respects other than name, to be treated as a suit against the government entity of which the defendant officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Because the express cause of action for damages created by § 1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units," *Jett v. Dallas Indep. Sch. Dist.*, 491

U.S. 701, 733 (1989), "the § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities." *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Other than conclusory allegations and legal conclusions that the Court need not credit, there is nothing in the complaint suggesting that either Detective Soles or Lieutenant Potter discriminated against Mr. Hammary pursuant to an official policy or custom. The official-capacity claims must therefore be dismissed.

### B. Remaining Defendants

Mr. Hammary has failed to state a § 1981 claim against any of the other defendants. The allegations against these defendants are conclusory and are devoid of factual details tending to support an inference that defendants Wallace, Kilian, or Grice purposely discriminated against Mr. Hammary. *See Gen. Bldg. Contractors*, 458 U.S. at 391.

The claim against the dog Xena is frivolous. The conclusion that a dog is not an appropriate defendant in a § 1981 action is perhaps "so obvious that authority bothering to state it is evasive." *See Bustamante v. Gonzales*, No. CV-07-0940 PHX-DGC (JRI), 2008 WL 4323505, at *6 (D. Ariz. Sept. 19, 2008). Mr. Hammary has cited no authority for the proposition that a dog is an appropriate defendant in a civil rights case. The cases decided under § 1983 are unanimous that a dog cannot be sued. *See, e.g.*, *Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001). It is ridiculous to suggest that a dog can purposely discriminate, which is a requirement of § 1981 liability, and indeed Mr. Hammary does not so allege.

Nor is there any authority suggesting that a dog has the capacity to be sued in any case. Federal Rule of Civil Procedure 17(b) discusses the capacity of an individual to sue or be sued and provides that such capacity shall be determined "by the law of the individual's domicile." Fed. R. Civ. P. 17(b). "While this provision generally addresses the capacity of corporations,

partnerships, and other business entities to litigate, there is no indication that it does not apply to other non-human entities or forms of life." *Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium*, 836 F. Supp. 45, 49 (D. Mass. 1993).

The plaintiff has not cited and the Court has not located a North Carolina case in which an animal was a defendant. Rather, the case law routinely treats animals as the personal property of their owners, *Shera v. N.C. State Univ. Veterinary Teaching Hosp.*, ___ N.C. App. ___, ___,723 S.E.2d 352, 354 (2012) (citing *Jones v. Craddock*, 210 N.C. 429, 431, 187 S.E. 558, 559 (1936)), rather than entities with their own legal rights. *See also Fitzgerald v. McKenna*, No. 95 Civ. 9075 (DAB)(HBP), 1996 WL 715531, at *7 (S.D.N.Y. Dec. 11, 1996) (denying attempt to maintain § 1983 action against police dog because "animals lack capacity to be sued"); Saru M. Matambanadzo, *Embodying Vulnerability: A Feminist Theory of the Person*, 20 Duke J. Gender L. & Pol'y 45, 61 (2012) (explaining that in the United States "animals are considered property and not generally eligible for the full scope of legal protections, rights and privileges enjoyed by human beings or other persons like corporations"); Lauren Magnotti, Note, *Pawing Open the Courthouse Door: Why Animals' Interests Should Matter When Courts Grant Standing*, 80 St. John's L. Rev. 455, 455 (2006) ("Animals do not have legal personhood and are treated as property under the law."). All North Carolina cases that the court has located concerning tort actions over conduct by a dog involve human beings as defendants, not the dogs. *See, e.g.*, *Holcomb v. Colonial Assocs., L.L.C.*, 358 N.C. 501, 597 S.E.2d 710 (2004); *Hunt v. Hunt*, 86 N.C. App. 323, 357 S.E.2d 444 (1987); *cf. Swain v. Tillett*, 269 N.C. 46 (1967) (involving conduct by a deer); *Cockerham v. Nixon*, 33 N.C. 269 (1850) (involving conduct by a bull). The § 1981 claim against Xena must be dismissed.

## II.    Section 1982

Mr. Hammary alleges that Defendants violated 42 U.S.C. § 1982.  That statute prohibits race discrimination in real and personal property transactions.  There are no allegations concerning any real or personal property transactions, so § 1982 is inapplicable.  Mr. Hammary has failed to state a plausible claim for relief under § 1982 against any of the defendants.

## III.    Section 1983

Mr. Hammary alleges that Defendants violated 42 U.S.C. § 1983.  To state a claim under § 1983, "a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States."  *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009).  As discussed *supra*, a police officer sued in his individual capacity may be entitled to qualified immunity, even at the motion to dismiss stage, and a suit brought against a police officer in his official capacity can succeed only if the officer acted pursuant to an official policy or custom.

### A.  Detective Soles

While Mr. Hammary does not explicitly state which constitutional rights the defendants allegedly violated, the Court reads the complaint to allege that Detective Soles violated his Fourth Amendment right to be free from unreasonable searches and seizures.  For the following reasons, the Court concludes that Mr. Hammary has adequately stated a § 1983 claim against Detective Soles in his individual capacity but not his official capacity.

#### 1.  Individual Capacity

Mr. Hammary's allegations regarding his traffic stop, vehicle search, arrest, and imprisonment state a Fourth Amendment claim against Detective Soles individually.

10

### a) Traffic Stop

A traffic stop constitutes a seizure under the Fourth Amendment and must not be unreasonable under the circumstances. *United States v. Mubdi*, 691 F.3d 334, 339-40 (4th Cir. 2012) (citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996)). As a general rule, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810.

Mr. Hammary alleges that he was following all traffic laws when Detective Soles pulled him over, and that Detective Soles thereafter made a number of racist remarks. These allegations, taken together with the other factual allegations set forth *supra*, allow the reasonable inference that Detective Soles stopped him because of his race and without probable cause. Because the law is well-settled that probable cause is necessary to effect a constitutional traffic stop, a finding of qualified immunity is not appropriate at this stage.

### b) Vehicle Search

Mr. Hammary's allegations also raise a plausible claim that the search conducted by Detective Soles was unconstitutional. A search is reasonable if it is authorized by a warrant or if the surrounding circumstances trigger one of "'a few specifically established and well-delineated exceptions'" to the warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). It appears from the complaint that Detective Soles lacked a warrant to search the truck. While there are a number of potential exceptions to the warrant requirement that might apply, Mr. Hammary has sufficiently pled facts that, assuming they are true, allow the reasonable inference that none were appropriately invoked. Because the constitutional right to be free from unreasonable warrantless searches is clearly

11

established and the contours of the exceptions likely to apply are well-settled, dismissal of Mr.

Hammary's search-related claim on qualified immunity grounds is inappropriate at this stage.

### c) Arrest and Imprisonment

Finally, assuming the truth of the alleged facts, it is plausible that Mr. Hammary's arrest

and imprisonment for cocaine possession supply a basis for § 1983 relief against Detective Soles.

Such a claim might be described as a "malicious prosecution claim under § 1983," but is

"properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates

certain elements of the common law tort." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)

(internal quotation marks omitted).  To state such a claim, a plaintiff must allege that the

defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by

probable cause, and (3) criminal proceedings terminated in the plaintiff's favor." *Id.*

Giving Mr. Hammary the benefit of all reasonable inferences, his complaint, though not

completely clear, appears to allege that the police dog did not in fact alert to the presence of

drugs, that Detective Soles declined to conduct a field test on the suspicious substance, and that

the charges were ultimately dropped.  Taken together with the other circumstances alleged and

set forth *supra*, this is sufficient to state a claim under § 1983.

The extent to which Detective Soles can be held responsible for Mr. Hammary's three-

month imprisonment presents a closer question on the issue of causation.  The "acts of

independent decision-makers (*e.g.*, prosecutors, grand juries, and judges) may constitute

intervening superseding causes that break the causal chain between a defendant-officer's

misconduct and a plaintiff's unlawful seizure." *Id.*  The grand jury's indictment of Mr.

Hammary could demonstrate the existence of probable cause to support his prosecution on drug

charges and render constitutional his imprisonment. *See Gerstein v. Pugh*, 420 U.S. 103, 117

n.19 (1975) ("[A]n indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." (internal quotation marks omitted)). However, "a grand jury's decision to indict will not shield a police officer who deliberately supplied misleading information that influenced the decision." *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (internal quotation marks and alterations omitted); *see also Miller v. Prince George's Cnty.*, 475 F.3d 621, 632 (4th Cir. 2007) (observing that "the Constitution did not permit a police officer . . . with reckless disregard for the truth, to make material misrepresentations or omissions to seek [an arrest] warrant that would otherwise be without probable cause").

The allegations in Mr. Hammary's complaint allow the reasonable inference that Detective Soles concealed or misrepresented facts before the grand jury and thereby influenced its decision to indict Mr. Hammary. Therefore, the Court cannot conclude at this stage that the indictment necessarily breaks the chain of causation between Detective Soles's alleged misconduct and Mr. Hammary's allegedly unlawful seizure. Mr. Hammary's § 1983 claim against Detective Soles in his individual capacity, as it pertains to Mr. Hammary's arrest and imprisonment, survives the motion to dismiss.[4]

## 2. Official Capacity

There are no factual allegations in the complaint to support a claim that the alleged violation of Mr. Hammary's rights by Detective Soles was caused by an official policy or custom. Mr. Hammary alleges only that the Davidson County Sheriff's Office failed to

---

[4] By statute, grand jury proceedings in North Carolina are generally secret. *See* N.C. Gen. Stat. § 15A-623(e); *State v. Jones*, 85 N.C. App. 56, 69, 354 S.E.2d 251, 258 (1987); *cf. State v. Broughton*, 29 N.C. 96 (1846) (setting forth exception when the ends of justice require otherwise). The Court expresses no opinion as to how § 15A-623 might affect these proceedings or as to whether the historical exception set forth in *Broughton* is still available.

13

adequately supervise and train its police officers. Inadequate police training may serve as the basis of § 1983 municipal liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Mr. Hammary's allegations are conclusory and he has not articulated facts that take this claim beyond the level of possibility. Because he has not pled facts to establish this cause of action, his official-capacity § 1983 suit against Detective Soles should be dismissed.

### B. Remaining Defendants

Mr. Hammary has failed to state a § 1983 claim against any of the other defendants. The police dog Xena does not have the capacity to be sued and specifically cannot be sued under § 1983. *See Dye*, 253 F.3d at 299; discussion *supra* Part I.B. Lieutenant Potter's alleged threats and racial insults toward Mr. Hammary do not rise to the level of a constitutional tort. *See, e.g., Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (addressing verbal harassment and abuse); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (addressing threats of bodily harm). The complaint fails to articulate how the actions of defendant Kilian might have violated Mr. Hammary's constitutional rights and provides no factual detail concerning any acts by defendant Wallace. And Mr. Hammary's allegations against Sheriff Grice are too vague and conclusory to state a § 1983 supervisory liability claim. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (describing the required elements of such a claim).

## IV. Section 1985

Mr. Hammary alleges that two or more of the defendants conspired to interfere with his civil rights, in violation of 42 U.S.C. § 1985. Relevant here is the § 1985(3) prohibition against conspiracies to deny equal protection of the laws. A § 1985(3) claimant must establish "(1) a

conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995). The Fourth Circuit has stated that "the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id.* at 1377. Mr. Hammary has failed to put forward anything other than conclusory allegations of a meeting of the minds among two or more of the defendants. The Court therefore concludes that his § 1985 claims should be dismissed.

## V. Section 1986

Finally, Mr. Hammary alleges that Defendants violated 42 U.S.C. § 1986, which provides a cause of action against any party with knowledge of a § 1985 conspiracy who fails to take action to prevent the relevant civil rights violation. Because "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985," *Trerice v. Simmons*, 755 F.2d 1081, 1085 (4th Cir. 1985), and because Mr. Hammary's § 1985 claims should be dismissed for reasons discussed *supra*, the Court concludes that his § 1986 claims should be dismissed as well.

## Motion for Rule 11 Sanctions

## I. The Claim Against Xena

Defendants move for sanctions to the extent Mr. Hammary has attempted to sue the police dog "Xena." This motion has merit.

Rule 11(b)(2) requires attorneys and pro se litigants to certify that the "claims, defenses, and other legal contentions" in their pleadings "are warranted by existing law or by a

nonfrivolous argument." Fed. R. Civ. P. 11(b)(2). In practice, this means that attorneys and pro

se litigants must "'stop-and-think' before initially making legal . . . contentions" and "conduct a

reasonable inquiry into the law and facts before signing pleadings, written motions, and other

documents." Fed. R. Civ. P. 11 advisory committee's note (1993); *see also Bus. Guides, Inc. v.*

*Chromatic Commc'ns Enters.*, 498 U.S. 533, 551 (1991) ("[Rule 11] imposes on *any* party who

signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry

into the facts and the law before filing . . . ." (emphasis added)). The "applicable standard is one

of reasonableness under the circumstances." *Id.*

Even taking into consideration Mr. Hammary's pro se status, a reasonable inquiry into

the applicable law should have revealed to him that his claims against Xena were frivolous. As

set forth more fully in the discussion *supra* regarding Defendants' Rule 12(b)(6) motion, § 1981

and § 1982 require intentional discrimination, § 1983 applies only to persons acting under color

of state law, and § 1985 and § 1986 require, respectively, a "meeting of the minds" between co-

conspirators, *Simmons*, 47 F.3d at 1377 (4th Cir. 1995), and "knowledge" of such a conspiracy,

42 U.S.C. § 1986. It is ridiculous to suggest that a dog is a person or that a dog is capable of

purposely discriminating, engaging in a conspiracy, or knowing about a conspiracy. Moreover,

Mr. Hammary has failed to identify any North Carolina authority establishing or even suggesting

that a dog has the capacity to be sued. On the contrary, the relevant case law treats dogs as

personal property without such capacity.

In his response to the motion for sanctions, Mr. Hammary makes no attempt to justify his

claims against Xena and ignores Defendants' arguments for sanctions regarding those claims.

Given the complete absence of legal support for bringing suit against a dog and the complete

absence of a nonfrivolous argument which would support suing a dog, sanctions are appropriate

for violation of Rule 11(b)(2). It is possible that the allegations against Xena also violate Rule 11(b)(1), which prohibits filing court papers for an improper purpose, such as harassment, but there is not enough information before the Court at this time to conclude that is the case.

Sanctions imposed under Rule 11 must be "appropriate." Fed. R. Civ. P. 11(c)(1). Determination of an appropriate Rule 11 sanction is generally left to "the sound discretion of the trial court." *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 210, 211 (4th Cir. 1988). However, the sanction imposed must be "limited to what suffices to deter repetition of the [improper] conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Miltier v. Downes*, 935 F.2d 660, 665 (4th Cir. 1991) ("The rule in this circuit is that in choosing a sanction, the guiding principle is that the least severe sanction adequate to serve the purposes of Rule 11 should be imposed." (internal quotation marks omitted)).

While Rule 11 itself does not enumerate factors that courts should consider in selecting an appropriate sanction, the Federal Rules Advisory Committee has identified several:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11 advisory committee's note (1993); *see also* 1-2 *Sanctions: The Federal Law of Litigation Abuse* § 16(D) (2012) (listing additional considerations). Monetary sanctions are a possibility. Fed. R. Civ. P. 11(c)(4). In determining the appropriate amount of a monetary sanction, courts should consider: "(1) the reasonableness of the injured party's requested fees and expenses; (2) the minimum necessary to deter; (3) the sanctioned party's ability to pay; and (4)

other factors relating to the severity of the Rule 11 violation." *In re Pitts*, Nos. 91-2265+, 1992 WL 150190, at *1 (4th Cir. July 2, 1992) (citing *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990)).

Possible nonmonetary sanctions include reprimanding Mr. Hammary, *Baldwin v. Boone*, No. 86-7341, 1987 WL 36541, at *1 (4th Cir. Feb. 6, 1987); dismissing counts filed against defendants other than the police dog, *see Gardendance, Inc. v. Woodstock Copperworks, Ltd.*, 230 F.R.D. 438, 450-51 (M.D.N.C. 2005) (citing *Doyle v. Murray*, 938 F.2d 33, 34 (4th Cir. 1991)) (describing dismissal as a "severe sanction generally reserved for egregious cases" and listing factors courts should consider in determining whether a sanction of dismissal is appropriate); requiring that depositions and other discovery proceedings be conducted in North Carolina; precluding Mr. Hammary from introducing certain evidence; and limiting the relief Mr. Hammary may seek, for example, by denying his claims for punitive damages or litigation expenses, *see* 1-2 *Sanctions* at § 16(B)(10) (noting courts' power and discretion to issue appropriate sanctions equivalent or less severe than dismissal of the action).

This matter has previously been set for hearing on March 28, 2013, at which time the Court will hear from the parties about the appropriate sanction.

## II. Other Claims

Defendants have submitted a video and audio recording of the traffic stop at the heart of this case and assert that the recording proves that a number of Mr. Hammary's allegations are plainly false. The recording is approximately 72 minutes long; it begins before the traffic stop and lasts through most of the search of the truck Mr. Hammary was driving. Nowhere on the recording can Detective Soles be heard making any racial statements to Mr. Hammary or

18

otherwise, and indeed the recording demonstrates that Detective Soles was polite and courteous to Mr. Hammary during the entire encounter.

In response, Mr. Hammary contends (1) that the recording may not have captured slurs Detective Soles uttered during the traffic stop and subsequent search, and (2) Defendants have not presented evidence contradicting Mr. Hammary's factual allegations. (Doc. 27 at 2.) While it is possible that the recording failed to capture some of Detective Soles's statements, it is not true that Defendants have failed to present any evidence that directly contradicts the factual allegations in the complaint. For example, Mr. Hammary alleges in his complaint that Detective Soles made racial slurs when asking for Mr. Hammary's license and rental agreement, and again when talking to Mr. Hammary while both men were seated in Detective Soles's police vehicle before the search. However, audio of both interactions appears to have been captured quite clearly; there is no indication that Detective Soles said anything during those two specific interactions that Mr. Hammary could have interpreted as a slur.

Ordinarily, "[w]hether a case is well grounded in fact will often not be evident until a plaintiff has been given a chance to conduct discovery." *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 372 (6th Cir. 1996); *see also Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988) (en banc). For this reason, the Federal Rules Advisory Committee has noted that "in the case of pleadings the sanctions issue under Rule 11 normally would be determined at the end of the litigation." Fed. R. Civ. P. 11 advisory committee's note (1983); *see also Kaplan v. Zenner*, 956 F.2d 149, 152 (7th Cir. 1992) (concluding that "the situation contemplated by the committee notes is one in which the basis for factual allegations in pleadings cannot be determined until such time as the party claiming those facts has had an adequate opportunity to develop his proof" (internal quotation marks omitted)).

19

Thus, the appropriate course at this time may be to stay the motion to the extent it pertains to Detective Soles's alleged statements, pending resolution of the merits. *Cf. Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 681 (6th Cir. 1988) ("[A]fter discovery has been launched, if plaintiffs are still unable to plead a sufficient factual basis for the allegations made against defendants, the spectre of Rule 11 sanctions should guide the actions of plaintiffs' counsel."). The Court will hear from the parties on this issue at the March 28 hearing.

The Court also notes that its denial of Defendants' Rule 12(b)(6) motion as it pertained to certain claims arising out of the traffic stop does not preclude imposition of Rule 11 sanctions at a later stage. *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003); *see also* discussion *supra*.

## CONCLUSION

Mr. Hammary has adequately stated § 1981 and § 1983 claims against Detective Soles in his individual capacity and a § 1981 claim against Lieutenant Potter in his individual capacity. Mr. Hammary's remaining claims are dismissed for failure to state a claim. The motion for sanctions is granted to the extent it pertains to the claims against Xena, with the appropriate sanction to be determined after a hearing, but otherwise ruling on the motion is deferred pending a hearing.

It is **ORDERED** that:

1.  Defendants' Motion to Dismiss, (Doc. 16), is **DENIED** as to Mr. Hammary's 42 U.S.C. § 1981 claims against defendants Soles and Potter in their individual capacities.

2.  Defendants' Motion to Dismiss, (Doc. 16), is **DENIED** as to Mr. Hammary's 42 U.S.C. § 1983 claim for violation of his Fourth Amendment rights against defendant Soles in his individual capacity.

20

3.  Defendants' Motion to Dismiss, (Doc. 16), is **GRANTED** as to all other claims and defendants.

4.  Defendant's Rule 11 Motion for Sanctions, (Doc. 22), is **GRANTED** to the extent sanctions are sought for attempting to sue a dog; the Court will determine the appropriate sanctions after a hearing on the issue.  The motion otherwise remains under advisement.

This the 22nd day of March, 2013.


_____
UNITED STATES DISTRICT JUDGE